**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KNEUPPER & COVEY PC, and BRANDON WINSTON,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DOES 1–10,<br><br>Defendants. | CIVIL ACTION NO.____________<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Kneupper & Covey PC (the "Firm") and Brandon Winston, by and through undersigned counsel, bring this action against Defendants John Does 1 through 10 ("Defendants"), and in support thereof allege as follows:

## NATURE OF THE ACTION

1. This case is about the theft of a client's settlement money out of a law firm's trust account. Defendants took it by pretending to be the client when they spoke to the lawyers, and by pretending to be the lawyers when they spoke to the client.

2. The Firm is a law firm. Mr. Winston is its client. In August 2026, the Firm held $23,726.63 in its Georgia IOLTA trust account at JPMorgan Chase Bank, N.A. for Mr. Winston, representing his share of a settlement.

3. Defendants obtained unauthorized access to Mr. Winston's e-mail account. They read his correspondence with the Firm. From it they learned that a settlement payment was coming, how much it would be, and how Mr. Winston and the Firm spoke to one another.

4. On August 31, 2026, Defendants registered the internet domain name **kneuppercovey.co** through the registrar NameSilo, LLC. The Firm's domain is **kneuppercovey.com**. The two are identical but for a single deleted letter.

5. Defendants used kneuppercovey.co to spoof the Firm's e-mail. They pointed the domain's mail exchange record at Google's mail servers, obtained a Google Workspace account for the domain, and published a DomainKeys Identified Mail signing key for it, so that messages sent from the lookalike domain would pass authentication checks and arrive in inboxes rather than in spam folders.

6. Defendants used that infrastructure to impersonate the Firm to Mr. Winston. They sent Mr. Winston e-mail that appeared to come from the Firm's legal assistant, from an address at kneuppercovey.co. Mr. Winston did not notice the missing letter. He believed he was corresponding with his lawyers and their assistant.

7. At the same time, Defendants impersonated Mr. Winston to the Firm. They intercepted the Firm's request for Mr. Winston's banking details,

submitted an account they controlled in response to that request, and then vouched for that account from Mr. Winston's own e-mail account and by phone.

8. The Firm does not disburse client trust funds on banking details alone. It verifies account numbers by phone before it releases the money. Defendants defeated that control by sending an e-mail from Mr. Winston's account that provided a new phone number.

9. A person impersonating Mr. Winston made the supposed "verification" call and confirmed the fraudulent account number.

10. The account Defendants confirmed at Community Federal Savings Bank was an account that Mr. Winston did not open. Nor does he control this account.

11. On August 31, 2026, the same day Defendants registered the lookalike domain, the Firm originated an Automated Clearing House (ACH) transfer of $23,726.63 out of its Georgia IOLTA trust account to the account Defendants controlled. The transfer settled on September 1, 2026.

12. Defendants then covered their tracks. The messages the Firm received from Mr. Winston's account are not in his sent items. Plaintiffs discovered this together, on a video call, when they compared what e-mails each side held.

13. Neither Plaintiff has the money. The Firm paid it out of its trust account and it is gone. Mr. Winston never received his settlement payment.

14. Plaintiffs do not yet know Defendants' names, but have information on Defendants' infrastructure: the registrar of the lookalike domain, the privacy-proxy account number behind it, the domain's name servers and hosting addresses, its mail provider, its Google site-verification token, its DomainKeys signing key, the receiving bank, and the receiving account number. Plaintiffs bring this action against John Does so that they may seek leave under Federal Rule of Civil Procedure 26(d)(1) to serve third-party subpoenas under Rule 45, learn Defendants' identities, amend to name them, and serve them.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 (federal question); 18 U.S.C. § 1964(c) (civil RICO); 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) (Lanham Act); 18 U.S.C. § 1030(g) (Computer Fraud and Abuse Act); and 18 U.S.C. § 2707(a) (Stored Communications Act).

16. This Court has supplemental jurisdiction over Plaintiffs' Georgia statutory and common-law claims under 28 U.S.C. § 1367(a), because those claims arise out of the same case or controversy as Plaintiffs' federal claims. This Court also has jurisdiction over the state-law claims under 28 U.S.C. §

1338(b) as claims of unfair competition joined with a substantial and related claim under the trademark laws.

17. This Court has personal jurisdiction over Defendants. Defendants intentionally directed their conduct at Georgia. They targeted a Georgia law firm and Georgia individual, appropriated that firm's Georgia-based name, registered a domain name for the purpose of impersonating it, transmitted communications into Georgia, and caused a Georgia trust account to be emptied. Defendants knew their conduct would cause harm in Georgia, and it did. Jurisdiction is proper under O.C.G.A. § 9-10-91(2) and (3) and under the Due Process Clause.

18. This Court additionally has personal jurisdiction over Defendants, and process may be served upon them wherever they may be found, under 18 U.S.C. § 1965(b) and (d), because the ends of justice require that Defendants, who reside in districts presently unknown to Plaintiffs, be brought before a single court. To the extent any Defendant is not subject to the jurisdiction of the courts of any state, this Court has jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred here: the Firm's trust account was administered here, the fraudulent payment instructions were received here, the verification call was

received here, the transfer was originated here, and Plaintiffs' injury was suffered here. Venue is also proper under 28 U.S.C. § 1391(b)(3) and under 18 U.S.C. § 1965(a) and (b).

20. Assignment to the Atlanta Division is proper under 28 U.S.C. § 90(a)(2) and LR 3.1(B), N.D. Ga., because the Firm's office is in Fulton County, Georgia, which lies within the Atlanta Division.

21. Because Defendants' identities are unknown, Plaintiffs cannot presently serve them. Plaintiffs will promptly move for leave to take limited expedited discovery under Federal Rule of Civil Procedure 26(d)(1) for the sole purpose of identifying Defendants, and will seek an extension of the service period under Federal Rule of Civil Procedure 4(m) for good cause.

## THE PARTIES

22. Kneupper & Covey PC is a Georgia professional corporation with its principal office at 11720 Amber Park Drive, Suite 160, PMB 1271, Alpharetta, Fulton County, Georgia 30009. The Firm is a plaintiffs' law firm that has practiced continuously under the name KNEUPPER & COVEY since 2019.

23. Mr. Winston is a natural person and a resident of Georgia. He was at all relevant times a client of the Firm.

24. Defendants John Does 1 through 10 are the persons and entities who perpetrated, participated in, directed, financed, or knowingly assisted

the scheme described in this Complaint, and who received or dispersed its proceeds. Their true names and capacities are unknown to Plaintiffs, who therefore sue them by fictitious names. Plaintiffs will amend this Complaint to state their true names and capacities when Plaintiffs learn them.

25. Plaintiffs presently identify the Doe Defendants by the roles they played and by the records that will identify them:

A. **John Doe 1** is the person who registered the domain name kneuppercovey.co on August 31, 2026, and who is identified in the registrar's public WHOIS record only as "User #ffd21162 Privacy," care of the privacy-proxy service PrivacyGuardian.org, 1928 E. Highland Ave., Ste. F104, PMB #255, Phoenix, Arizona 85016, at the proxy e-mail address pwp-680c0a46871e22dcdce7287b37090de1@privacyguardian.org. The registrar of record is NameSilo, LLC (IANA Registrar ID 1479). The registry domain identifier is D53990998-CNIC.

B. **John Doe 2** is the person who created and controlled the Google Workspace account associated with kneuppercovey.co, which is identified in the domain's public DNS records by the site-verification token "google-site-verification=ceFuEfCSSf7tFn5IYRPGQkORAqw5GTzZmrIxdOAtc2g" and by the DomainKeys Identified Mail public key published at google._domainkey.kneuppercovey.co, and who used that account to send e-mail impersonating the Firm.

C. **John Doe 3** is the person who obtained and used unauthorized access to Mr. Winston's e-mail account, read his communications with the Firm, intercepted and suppressed the Firm's request for his banking details, sent messages from that account, and then deleted them.

D. **John Doe 4** is the person who impersonated Mr. Winston on the telephone and confirmed the fraudulent account number to the Firm.

E. **John Doe 5** is the person who, on information and belief, opened an account at Community Federal Savings Bank in Mr. Winston's name, and who controlled that account and withdrew the funds transferred into it, together with any financial-technology platform account holder through which that account was opened.

F. **John Does 6 through 10** are the other participants in the scheme, including any person who recruited or directed the foregoing, any person who received or transmitted the stolen funds, and any person who knowingly provided the infrastructure, accounts, or identity documents used to carry out the scheme.

26. Whenever this Complaint alleges an act of a Defendant, it alleges that the Defendant did the act personally, or through an agent, or that the Defendant authorized, ratified, directed, or knowingly assisted it.

## FACTUAL ALLEGATIONS

### A. The Firm, Its Name, and Its Client

27. The Firm has practiced law under the name KNEUPPER & COVEY continuously since 2019. It represents consumers in consumer protection, fraud, and racketeering cases. It maintains offices in Alpharetta, Georgia, and Huntington Beach, California, and it holds itself out to the public under the KNEUPPER & COVEY name through its website at kneuppercovey.com, its e-mail addresses at that domain, its advertising, its court filings, and its correspondence.

28. Through that continuous and exclusive use, the name KNEUPPER & COVEY has acquired distinctiveness and secondary meaning. Clients, prospective clients, opposing parties, courts, and the public associate the KNEUPPER & COVEY name with the Firm and with the Firm alone. The Firm owns common-law trademark and service-mark rights in KNEUPPER & COVEY.

29. The Firm's internet domain name is kneuppercovey.com. Every lawyer and employee of the Firm uses an e-mail address at that domain. The Firm's domain publishes a Domain-based Message Authentication, Reporting and Conformance policy of "quarantine," which instructs receiving mail servers to divert messages that falsely claim to originate from kneuppercovey.com.

30. Mr. Winston retained the Firm to represent him. The Firm prosecuted his claim related to a disputed solar installation and related financing and settled it. The settlement proceeds were deposited into the Firm's Georgia IOLTA trust account. After deduction of fees and expenses, $23,726.63 remained payable to Mr. Winston.

**B. Defendants Compromised Mr. Winston's E-Mail Account**

31. At a time presently unknown to Plaintiffs, and in any event before August 31, 2026, Defendants obtained access to Mr. Winston's e-mail account without his authorization and without the authorization of the provider that maintains it.

32. Defendants read Mr. Winston's stored communications with the Firm. They learned that the Firm was holding settlement funds for him, the amount of those funds, the names of the Firm personnel who corresponded with him, the form and tone of those communications, and the Firm's process for disbursing trust funds.

33. Defendants then sent e-mails from Mr. Winston's own account to the Firm, and after the Firm acted on those messages, Defendants deleted them from Mr. Winston's account so that Mr. Winston would not find them. The messages the Firm received are absent from Mr. Winston's sent items.

34. On information and belief, Defendants maintained persistent access to Mr. Winston's account, which permitted them to monitor his

correspondence with the Firm in real time and to intercept and suppress messages that would have revealed the fraud.

**C. Defendants Registered and Weaponized a Lookalike Domain**

35. On August 31, 2026, at 11:09:18 Coordinated Universal Time, Defendants registered the domain name kneuppercovey.co through NameSilo, LLC.

36. Defendants registered the domain behind a privacy-proxy service, PrivacyGuardian.org, so that the public WHOIS record would show no human name, no real address, and no working contact address. The record shows only "User #ffd21162 Privacy" and a proxy address.

37. Defendants pointed the domain at name servers ns1.dnsowl.com, ns2.dnsowl.com, and ns3.dnsowl.com, and at internet protocol addresses 172.234.25.42, 172.232.24.161, and 172.232.24.235, which are assigned to Akamai Technologies, Inc.

38. Defendants configured the domain to send and receive e-mail through Google. The domain's mail exchange record designates SMTP.GOOGLE.COM. The domain publishes a Google site-verification token, "google-site-verification=ceFuEfCSSf7tFn5IYRPGQkORAqw5GTzZmrIxdOAtc2g," which is issued only to a person who has proved control of the domain to Google through a Google account. The domain also publishes a DomainKeys

Identified Mail public key at google._domainkey.kneuppercovey.co, which exists so that messages sent from the domain will carry a valid cryptographic signature.

39. Defendants never built a website at kneuppercovey.co. No web server answers at the domain, and no certificate authority has ever issued a publicly logged certificate for it. The domain's only function was to send e-mail that looked like the Firm's.

**D. Defendants Impersonated the Firm and the Client**

40. Defendants sent Mr. Winston e-mail from an address at kneuppercovey.co. The messages purported to come from a member of the Firm's staff. These messages led Mr. Winston to believe that the Firm would be sending him a check by certified mail rather than disbursing his settlement funds electronically.

41. Those messages used the Firm's name. They were designed to make Mr. Winston believe he was communicating with his own lawyers. They succeeded. Mr. Winston did not notice that the domain ended in ".co" rather than ".com," and he responded to Defendants as though they were the Firm.

42. At the same time, Defendants intercepted the Firm's e-mail to Mr. Winston's genuine account, which directed Mr. Winston to a secure form to enter his bank details. Mr. Winston never saw that message and never entered any banking details.

43. Defendants followed the link in that message, accessed the Firm's secure form without authorization using the password and security code from the Firm's own e-mail, and submitted banking details three separate times between August 25 and August 28, 2026—first an account at SoFi Bank, then two different accounts at Community Federal Savings Bank. The banking details on which the Firm acted were submitted by Defendants, not by Mr. Winston.

44. Defendants thus controlled both sides of the conversation. Mr. Winston believed he was talking to the Firm; he was talking to Defendants. The Firm believed it was talking to Mr. Winston; it was talking to Defendants.

**E. Defendants Defeated the Firm's Telephone Verification Control**

45. The Firm's practice is to verify banking instructions by telephone before disbursing client trust funds, precisely because banking details submitted electronically can be falsified.

46. Defendants sent an e-mail to the Firm's legal assistant over Mr. Winston's name directing her to call him at (646) 948-7460, which Defendants described as his "direct line," and stating that he had already submitted his banking information through the Firm's link. Neither statement was true.

47. The Firm's legal assistant failed to recognize that this message could be a fraud indicator because it is common for Firm clients to use other numbers, such as work numbers.

48. On or about August 28, 2026, at approximately 3:00 p.m. Eastern Time, the Firm's legal assistant spoke by telephone with a person who identified himself as Brandon Winston, calling from telephone number (646) 948-7460. That person was not Brandon Winston; he was one of the Defendants impersonating Mr. Winston. That person confirmed that the settlement funds should be sent to the account at Community Federal Savings Bank.

49. The Firm relied on that confirmation. Had Defendants not impersonated Mr. Winston on that call, the Firm would not have released the funds.

## F. The Theft of the Funds

50. On August 31, 2026, at 5:29:44 p.m., a Firm employee submitted an ACH transfer of $23,726.63 from the Firm's Georgia IOLTA account at JPMorgan Chase Bank, N.A. to Defendants' account at Community Federal Savings Bank. The transfer was captioned "Settlement Payment." JPMorgan Chase assigned it transaction no. 11234687280. It settled on September 1, 2026.

51. The funds left the Firm's trust account. Defendants received them. Mr. Winston did not.

52. On information and belief, Defendants promptly withdrew, transferred, or converted the funds, and moved them through one or more further accounts in order to conceal their source, ownership, and control.

### G. Discovery of the Fraud and Plaintiffs' Response

53. Plaintiffs discovered the fraud on or about September 14, 2026, when the Firm and Mr. Winston compared their records during a video conference and found that the messages the Firm had received from Mr. Winston's account did not exist in his sent items, and that Mr. Winston had been corresponding with an address at kneuppercovey.co rather than kneuppercovey.com.

54. The Firm reported the theft to JPMorgan Chase Bank, N.A. and requested recall of the transfer.

55. The Firm submitted an Unauthorized Transfer Form to Community Federal Savings Bank at its fraud escalations address, identifying the transfer, the originating and receiving accounts, and the amount.

56. On September 14, 2026, the Firm filed a complaint with the Federal Bureau of Investigation's Internet Crime Complaint Center, which assigned it Submission ID b49dc3b9a98046f68453a8846d2a3ed9.

57. Plaintiffs have made no recovery.

**H. Injury**

58. The Firm has been injured in its business and property. It lost $23,726.63 in client trust funds. It has incurred and will incur costs of investigation and remediation, including the costs of identifying Defendants, of responding to the intrusion, and of securing its systems and communications. Its professional reputation and the goodwill associated with the KNEUPPER & COVEY name have been injured, because its own client was deceived by communications bearing the Firm's name, and because the Firm's trust account was drained by a scheme carried out under that name.

59. Mr. Winston has been injured in his business and property. He did not receive the settlement proceeds he was owed. His e-mail account was invaded and his private communications were read and destroyed.

60. On information and belief, Mr. Winston's name and identifying information were used to open a bank account he did not authorize, exposing him to further financial and legal risk and requiring him to expend time and money on identity remediation.

61. Defendants acted with the specific intent to cause harm and acted in bad faith. Defendants have caused Plaintiffs unnecessary trouble and expense.

## THE ENTERPRISE

62. At all relevant times Defendants were an association in fact, within the meaning of 18 U.S.C. § 1961(4) and O.C.G.A. § 16-14-3(3), of individuals associated together for the common purpose of stealing money by impersonating law firms and their clients (the "Enterprise").

63. The Enterprise's purpose was to obtain money by deception. It had relationships among those associated with it: its members divided the work of compromising mailboxes, acquiring and configuring lookalike domains, drafting and sending the deceptive communications, staffing the telephone impersonation, opening and operating receiving bank accounts, and moving the proceeds.

64. On information and belief the Enterprise existed before the conduct alleged here, it operated an infrastructure that outlasted any single theft, and it continues to exist.

65. The Enterprise is an ongoing organization that functions as a continuing unit. Its members registered a domain through a registrar, purchased privacy proxy services, obtained hosting, opened a Google Workspace account, configured authenticated mail sending, obtained or fabricated identity documents sufficient to open a bank account in another person's name, and arranged to move funds out of that account.

66. Each Doe Defendant is a person distinct from the Enterprise within the meaning of 18 U.S.C. § 1962(c).

67. The Enterprise engaged in, and its activities affected, interstate and foreign commerce. Its communications crossed state lines. Its domain was registered with an Arizona registrar under a Colombian country-code top-level domain administered through a United Kingdom registry operator. Its mail moved through Google's servers. Its hosting addresses are assigned to a Massachusetts corporation. The funds it stole moved by ACH transfer from a New York bank to a New York bank on behalf of a Georgia account holder.

**THE PATTERN OF RACKETEERING ACTIVITY**

68. Defendants conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity, consisting of the predicate acts set forth below and others presently unknown to Plaintiffs.

69. Plaintiffs' ability to plead the dates, times, and precise contents of Defendants' communications is limited by Defendants' own conduct: Defendants deleted the messages they sent from Mr. Winston's account, registered their domain behind a privacy proxy, and have concealed their identities. Plaintiffs plead the predicate acts known to them and will amend to plead others as discovery permits.

70. **Predicate Act No. 1 (Wire Fraud, 18 U.S.C. § 1343).** On August 25, 2026, at approximately 2:34 p.m. Eastern Time (18:34 Coordinated Universal Time), Defendants caused to be transmitted by means of wire communication in interstate commerce a submission to the Firm's secure electronic form on the Firm's website at kneuppercovey.com, in which Defendants entered an account number at SoFi Bank as the account to which Mr. Winston's settlement funds should be sent. Defendants made that submission using the password and security code that the Firm had sent to Mr. Winston by e-mail earlier that day, and which Defendants had obtained through their unauthorized access to his account. The submission falsely represented that it was made by Mr. Winston and that the account was his. Those representations were material, were false when made, and Defendants knew them to be false.

71. **Predicate Act No. 2 (Wire Fraud, 18 U.S.C. § 1343).** On August 26, 2026, at approximately 5:05 a.m. Eastern Time, Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail message from Mr. Winston's compromised account, brandontwinston@gmail.com, to the Firm's legal assistant Elyssa Gerber at elyssa@kneuppercovey.com, in the thread captioned "Re: Winston v. GoodLeap -- Payment Instructions." The message read, in full: "Good morning Elyssa today works for me." The message falsely represented that it

was sent by Mr. Winston. Mr. Winston did not send it and did not authorize it.

72. **Predicate Act No. 3 (Wire Fraud, 18 U.S.C. § 1343).** On August 26, 2026, at approximately 11:24 a.m. Eastern Time (15:24 Coordinated Universal Time), Defendants caused to be transmitted by means of wire communication in interstate commerce a second submission to the Firm's secure electronic form on the Firm's website at kneuppercovey.com, in which Defendants entered an account number at Community Federal Savings Bank as the account to which Mr. Winston's settlement funds should be sent. The submission falsely represented that it was made by Mr. Winston and that the account was his. Those representations were material, were false when made, and Defendants knew them to be false.

73. **Predicate Act No. 4 (Wire Fraud, 18 U.S.C. § 1343).** On August 26, 2026, at approximately 11:28 a.m. Eastern Time (15:28:19 Coordinated Universal Time), four minutes after the submission described in Predicate Act No. 3, Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail from Mr. Winston's compromised account, brandontwinston@gmail.com, to the Firm's legal assistant Elyssa Gerber at elyssa@kneuppercovey.com, in the thread captioned "Re: Winston v. GoodLeap -- Payment Instructions." The message read, in full: "Elysaa, I am out shuffling between errands and meetings

please call me on my direct line anytime today 646 948 7460, I have submitted the necessary bank information using the link provided." The message falsely represented that it was sent by Mr. Winston, that telephone number (646) 948-7460 was Mr. Winston's direct line, and that Mr. Winston had submitted his banking information through the Firm's secure form. Each of those representations was material, was false when made, and Defendants knew it to be false.

74. **Predicate Act No. 5 (Wire Fraud, 18 U.S.C. § 1343).** On August 28, 2026, at approximately 1:31 p.m. Eastern Time (17:31 Coordinated Universal Time), Defendants caused to be transmitted by means of wire communication in interstate commerce a third submission to the Firm's secure electronic form on the Firm's website at kneuppercovey.com, in which Defendants entered a second and different account number at Community Federal Savings Bank as the account to which Mr. Winston's settlement funds should be sent. That account is the account into which Mr. Winston's settlement funds were transferred three days later. The submission falsely represented that it was made by Mr. Winston and that the account was his. Those representations were material, were false when made, and Defendants knew them to be false.

75. **Predicate Act No. 6 (Wire Fraud, 18 U.S.C. § 1343).** On August 28, 2026, at approximately 1:47 p.m. Eastern Time (17:47:57

Coordinated Universal Time), sixteen minutes after the submission described in Predicate Act No. 5, Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail from Mr. Winston's compromised account, brandontwinston@gmail.com, to the Firm's legal assistant Elyssa Gerber at elyssa@kneuppercovey.com, in the thread captioned "Re: Winston v. GoodLeap -- Payment Instructions." The message read, in full: "Good afternoon Elyssa, I just tried calling you back but no response, I will be expecting your call." The message falsely represented that it was sent by Mr. Winston and that Mr. Winston had attempted to return the Firm's telephone calls. Those representations were material, were false when made, and Defendants knew them to be false, and Defendants made them to induce the Firm to place the verification call described in Predicate Act No. 7.

76. **Predicate Act No. 7 (Wire Fraud, 18 U.S.C. § 1343).** On or about August 28, 2026, at approximately 3:00 p.m. Eastern Time, Defendants caused to be transmitted by means of wire communication in interstate commerce a telephone call between telephone number (646) 948-7460 and the Firm's legal assistant in Alpharetta, Georgia. During that call a Defendant falsely stated that he was Brandon Winston and falsely confirmed that Mr. Winston's settlement funds should be sent to the Community Federal Savings Bank account that Defendants had submitted to the Firm's secure

form ninety minutes earlier. Those statements were material, were false when made, and Defendants knew them to be false.

77. **Predicate Act No. 8 (Wire Fraud, 18 U.S.C. § 1343).** On August 31, 2026, at approximately 9:07 a.m. Eastern Time, Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail from elyssa@kneuppercovey.co to Mr. Winston at brandontwinston@gmail.com. The message stated, in substance, that Mr. Winston should expect a call on September 2, 2026, to confirm his banking details. The message falsely represented that it came from the Firm. Defendants sent it to postpone Mr. Winston's contact with the Firm, because Defendants had already impersonated Mr. Winston on the verification call described in Predicate Act No. 7 and had already caused their own account to be verified.

78. **Predicate Act No. 9 (Wire Fraud, 18 U.S.C. § 1343).** On August 31, 2026, at approximately 5:29 p.m. Eastern Time, Defendants caused the Firm to transmit by means of wire communication in interstate commerce an ACH transfer of $23,726.63 from the Firm's Georgia IOLTA trust account at JPMorgan Chase Bank, N.A. to the Community Federal Savings Bank account that Defendants had submitted to the Firm's secure electronic form and confirmed on the telephone call described in Predicate Act No. 7, bearing Chase transaction no. 11234687280. Defendants caused

that transmission by the false submissions, e-mails, and telephone confirmation described in Predicate Acts Nos. 1 through 8, knowing that the Firm's transfer would follow in the ordinary course of the Firm's business, and for the purpose of executing the scheme alleged above.

79. **Predicate Act No. 10 (Wire Fraud, 18 U.S.C. § 1343).** On September 1, 2026, at approximately 11:44 a.m. Eastern Time (15:44:51 Coordinated Universal Time), Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail from Mr. Winston's compromised account, brandontwinston@gmail.com, to the Firm's legal assistant Elyssa Gerber at elyssa@kneuppercovey.com, in the thread captioned "Re: Winston v. GoodLeap -- Payment Instructions." The message read, in full: "Good morning Elyssa, When can I expect payment?" The message falsely represented that it was sent by Mr. Winston and that Mr. Winston was still awaiting payment. Defendants sent it after the transfer had already been made, to lull the Firm into believing it was dealing with its own client and to postpone discovery of the theft.

80. **Predicate Act No. 11 (Wire Fraud, 18 U.S.C. § 1343).** On September 1, 2026, at approximately 1:32 p.m. Eastern Time (17:32:32 Coordinated Universal Time), Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail from Mr. Winston's compromised account, brandontwinston@gmail.com, to the Firm's legal

assistant Elyssa Gerber at elyssa@kneuppercovey.com, in the thread captioned “Re: Winston v. GoodLeap -- Payment Instructions.” The message read, in full: “Elyssa, Money hit my account already, thank you.” The message falsely represented that it was sent by Mr. Winston and that Mr. Winston had received his settlement funds. Mr. Winston had received nothing. Defendants sent the message to close out the Firm’s file, to stop the Firm from following up with its client, and to postpone discovery of the theft.

81. **Predicate Act No. 12 (Wire Fraud, 18 U.S.C. § 1343).** On September 3, 2026, at approximately 1:53 p.m. Eastern Time, Defendants caused to be transmitted by means of wire communication in interstate commerce an e-mail from elyssa@kneuppercovey.co to Mr. Winston at brandontwinston@gmail.com. The message stated, in substance, that Mr. Winston need not be concerned about a telephone call to confirm banking details because the Firm would be sending him a check by certified mail. The message falsely represented that it came from the Firm. Defendants sent it to postpone Mr. Winston’s contact with the Firm and to conceal the fact that Defendants had already received the funds intended for him.

82. **Predicate Act No. 13 (Bank Fraud, 18 U.S.C. § 1344).** On or about August 28, 2026, Defendants knowingly executed and attempted to execute a scheme to obtain money and funds under the custody and control of federally insured financial institutions — JPMorgan Chase Bank, N.A., and

Community Federal Savings Bank — by means of false and fraudulent pretenses and representations, including, on information and belief, by opening accounts at those institutions in the name of Brandon T Winston without his authorization, and by inducing the transfer of $23,726.63 into one of them.

83. **Predicate Act No. 14 (Fraud in Connection With Identification Documents and Information, 18 U.S.C. § 1028(a)(7)).** Beginning on or before August 25, 2026 and continuing thereafter, Defendants knowingly transferred, possessed, and used, without lawful authority, means of identification of Brandon Winston — including his name and his e-mail address brandontwinston@gmail.com, which is a unique electronic address within the meaning of 18 U.S.C. § 1028(d)(7)(C) — with the intent to commit, to aid and abet, and in connection with the unlawful activity alleged above, including by sending the messages described in Predicate Acts Nos. 2, 4, 6, 10, and 11 over Mr. Winston's name and, on information and belief, by using those means of identification to open the accounts described above.

84. **Predicate Act No. 15 (Money Laundering, 18 U.S.C. §§ 1956 and 1957).** On or about September 1, 2026, Defendants conducted and attempted to conduct financial transactions involving the $23,726.63 in criminally derived property, knowing that the property represented the

proceeds of the wire and bank fraud alleged above, and did so with the intent to promote the carrying on of that unlawful activity and to conceal the nature, source, ownership, and control of the proceeds.

85. **Predicate Act No. 16 (Theft by Deception, O.C.G.A. § 16-8-3).** On or about August 31, 2026, Defendants obtained $23,726.63 belonging to Plaintiffs by deceitful means and artful practice, with the intention of depriving Plaintiffs of that property, by creating and confirming the false impression that the Community Federal Savings Bank account was Mr. Winston's own and that he had directed his settlement funds to it.

86. **Predicate Act No. 17 (Identity Fraud, O.C.G.A. § 16-9-121).** Beginning on or before August 25, 2026, and continuing thereafter, Defendants willfully and fraudulently used identifying information concerning Brandon Winston without his authorization and consent, and with the intent unlawfully to appropriate resources of Mr. Winston and of the Firm to Defendants' own use, including by corresponding with the Firm over his name and from his e-mail account and, on information and belief, by opening and operating bank accounts in his name.

87. **Predicate Act No. 18 (Computer Theft, O.C.G.A. § 16-9-93(a)).** Beginning on or before August 25, 2026, and continuing thereafter, Defendants used Mr. Winston's e-mail account, the Firm's secure electronic form, and the computer networks on which they reside, with knowledge that

such use was without authority and with the intention of taking and appropriating Plaintiffs' property, of obtaining property by deceitful means and artful practice, and of converting Plaintiffs' property to Defendants' own use.

88. **Predicate Act No. 19 (Computer Trespass, O.C.G.A. § 16-9-93(b)).** Beginning on or before August 25, 2026 and continuing thereafter, Defendants used Mr. Winston's e-mail account with knowledge that such use was without authority and with the intention of "[d]eleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or computer network" and of "[o]bstructing, interrupting, or in any way interfering with the use of a computer program or data," O.C.G.A. § 16-9-93(b)(1) and (2). Defendants deleted from Mr. Winston's account each of the messages they sent over his name, so that he would not find them, and intercepted and withheld from him the Firm's own messages, so that he would not learn that the Firm was preparing to disburse his settlement funds electronically.

89. **Predicate Act No. 20 (Computer Forgery, O.C.G.A. § 16-9-93(d)).** Beginning on or before August 25, 2026 and continuing thereafter, Defendants created and transmitted data—the e-mails described above purporting to originate from Mr. Winston and from the Firm, and the three submissions to the Firm's secure form purporting to be made by Mr. Winston

— with knowledge that the data would be represented as authentic when it was not, and which if written on a tangible document would have constituted forgery under Georgia law.

90. The predicate acts alleged above are related and shared the same purpose to obtain Plaintiffs' money by deception. They shared the same participants, the same victims, and the same methods of commission. They were not isolated events. They constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and O.C.G.A. § 16-14-3(4).

91. The predicate acts also threaten continued criminal activity and are part of an ongoing criminal enterprise. The Enterprise's infrastructure remains in place: the domain kneuppercovey.co remains registered to Defendants through August 31, 2027, its mail configuration remains live, and its registration record was modified on September 5, 2026, after Defendants stole Plaintiffs' money. Defendants retain the capacity to impersonate the Firm again, and to impersonate other firms, at any time. Defendants' conduct is their regular way of doing business.

**DEFENDANTS' IDENTITIES ARE ASCERTAINABLE**

92. Defendants are real people and third parties hold records that identify them.

93. Plaintiffs have already exhausted the means of identification available to them without judicial process. The registrar's public records are

masked by a privacy proxy. The domain serves no website from which its operator could be identified. The receiving bank will not disclose its accountholder. Plaintiffs have reported the theft to their bank, to the receiving bank, and to federal law enforcement, and have received no identification of Defendants.

94. The following third parties hold records that will identify Defendants:

A. **NameSilo, LLC**, the registrar of kneuppercovey.co, and its affiliated privacy service **PrivacyGuardian.org**, hold the registrant's true name, address, e-mail address, telephone number, payment instrument, and the internet protocol addresses from which the account was created and accessed, for the account identified as "User #ffd21162 Privacy" and for registry domain identifier D53990998-CNIC.

B. **Google LLC** holds the subscriber, payment, login, and internet protocol records for the Google account that obtained site-verification token "google-site-verification=ceFuEfCSSf7tFn5IYRPGQkORAqw5GTzZmrIxdOAtc2g" for kneuppercovey.co, together with the Workspace administrative records, mailbox contents, and mail transmission logs for every e-mail address at that domain.

C. **Akamai Technologies, Inc.** holds the customer and billing records for the account to which internet protocol addresses 172.234.25.42, 172.232.24.161, and 172.232.24.235 were assigned during the relevant period.

D. **Community Federal Savings Bank**, and any financial-technology platform through which the account at Community Federal Savings Bank was opened; the bank holds the account opening application, the identity documents submitted with it, the device and internet protocol records of the application and of subsequent logins, the account statements, and the records of every transfer of the stolen funds out of that account.

E. **SoFi Bank** holds the account opening application, the identity documents submitted with it, and the device and internet protocol records for the account Defendants submitted to the Firm on August 25, 2026.

F. **Inter & Co Payments, Inc.** (a/k/a Pronto), a registered money services business and licensed money transmitter, NMLS ID No. 907330, for which Community Federal Savings Bank provides banking services, and which the Community Federal Savings Bank fraud investigator identified to the Firm as the provider of the account to which the funds were transferred, holds the customer identification records and identity documents collected when that account was opened, the device and internet protocol

records of the application and of subsequent logins, and the records of every transfer of the stolen funds out of that account.

G. **Mr. Winston's e-mail provider** holds the login, internet protocol, device, and configuration records for his account, which will show when and from where Defendants accessed it, together with any forwarding rules or filters Defendants created and the messages Defendants deleted.

H. **The telephone carrier for (646) 948-7460** holds the subscriber and call detail records for the number used in the impersonated verification call of August 28, 2026.

I. **The Firm's secure-form provider** retains the internet protocol address, device information, and timestamp of the submission by which Defendants entered the fraudulent banking details.

95. Plaintiffs will seek leave of this Court to serve narrow subpoenas on those third parties, limited to information sufficient to identify and serve Defendants.

## COUNT I

## Violation of the Racketeer Influenced and Corrupt Organizations Act

## 18 U.S.C. § 1962(c)

## (Both Plaintiffs Against All Defendants)

96. Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

97. The Enterprise is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), and it engaged in and affected interstate and foreign commerce.

98. Each Defendant was employed by or associated with the Enterprise and conducted and participated, directly and indirectly, in the conduct of its affairs.

99. Each Defendant did so through a pattern of racketeering activity, consisting of the predicate acts alleged above, each of which is an act indictable under 18 U.S.C. § 1341, § 1343, § 1344, § 1028, § 1956, or § 1957, and all of which are enumerated in 18 U.S.C. § 1961(1).

100. Plaintiffs were injured in their business and property by reason of Defendants' violation of 18 U.S.C. § 1962(c). Defendants' predicate acts were the direct and proximate cause of Plaintiffs' loss of $23,726.63 and of the further injuries alleged above. The injury was suffered in the United States.

**COUNT II**

**Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)**

**(Both Plaintiffs Against All Defendants)**

101. Each Defendant knowingly agreed with one or more other Defendants to conduct and participate in the conduct of the affairs of the

Enterprise through a pattern of racketeering activity, and knowingly agreed to the commission of at least two predicate acts in furtherance of that scheme.

102. On information and belief the scheme alleged in this Complaint was not carried out by one person acting alone. It required, at a minimum, a person to compromise and monitor Mr. Winston's mailbox, a person to acquire and configure the lookalike domain and its mail infrastructure, a person to speak on the telephone as Mr. Winston, and a person to open and operate a bank account in Mr. Winston's name and to move the funds out of it. The agreement may be inferred from the coordination of those acts.

103. Plaintiffs were injured in their business and property by reason of that conspiracy and by the overt acts committed in furtherance of it, and are entitled to threefold damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

## COUNT III

## Violation of the Georgia RICO Act

## O.C.G.A. § 16-14-4(a) and (b)

## (Both Plaintiffs Against All Defendants)

104. Georgia defines "racketeering activity" to include conduct defined as racketeering activity under 18 U.S.C. § 1961(1), any violation of 18 U.S.C.

§ 1028, and the Georgia offenses of theft, identity fraud, forgery, and computer crime. O.C.G.A. § 16-14-3(5).

105. Defendants acquired and maintained, directly and indirectly, an interest in and control of the $23,726.63 sent from the Firm's trust account through a pattern of racketeering activity and through the proceeds of that activity, in violation of O.C.G.A. § 16-14-4(a).

106. Defendants, being associated with the Enterprise, conducted and participated in, directly and indirectly, the affairs of the Enterprise through a pattern of racketeering activity, in violation of O.C.G.A. § 16-14-4(b).

107. Defendants committed at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions having the same or similar intents, results, accomplices, victims, and methods of commission, and interrelated by distinguishing characteristics, and not isolated incidents. O.C.G.A. § 16-14-3(4).

**COUNT IV**

**Conspiracy to Violate the Georgia RICO Act**

**O.C.G.A. § 16-14-4(c)**

**(Both Plaintiffs Against All Defendants)**

108. Each Defendant conspired and endeavored to violate O.C.G.A. § 16-14-4(a) and (b), in violation of O.C.G.A. § 16-14-4(c).

109. Plaintiffs were injured by reason of that conspiracy and are entitled to the remedies provided by O.C.G.A. § 16-14-6(c).

**COUNT V**

**Violation of the Lanham Act — False Designation of Origin and False Representation, 15 U.S.C. § 1125(a)**

**(Plaintiff Kneupper & Covey PC Against All Defendants)**

110. The Firm owns and uses the service mark KNEUPPER & COVEY in commerce in connection with the provision of legal services. The mark is distinctive and has acquired secondary meaning.

111. Defendants used the KNEUPPER & COVEY mark, and a domain name confusingly similar to the Firm's own domain name, in commerce and in connection with services, without the Firm's consent.

112. Defendants' use was a false designation of the origin of their communications and a false and misleading representation of fact, and it was likely to cause — and did cause — confusion, mistake, and deception as to the origin, sponsorship, and approval of Defendants' communications. Mr. Winston was in fact deceived. He believed Defendants' messages came from the Firm.

113. Defendants acted willfully and in bad faith, with actual knowledge of the Firm's rights and with the specific intent to trade upon the Firm's name and reputation in order to steal money.

114. The Firm has been injured in its commercial reputation and its business by Defendants' conduct, and is entitled to Defendants' profits, its actual damages, treble damages, the costs of the action, and reasonable attorney's fees as an exceptional case, under 15 U.S.C. § 1117(a), and to injunctive relief under 15 U.S.C. § 1116.

**COUNT VI**

**Violation of the Anticybersquatting Consumer Protection Act**

**15 U.S.C. § 1125(d)**

**(Plaintiff Kneupper & Covey PC Against All Defendants)**

115. The KNEUPPER & COVEY mark was distinctive at the time Defendants registered the domain name kneuppercovey.co.

116. The domain name kneuppercovey.co is confusingly similar to the KNEUPPER & COVEY mark and to the Firm's domain name kneuppercovey.com. It differs from the Firm's domain by a single omitted letter.

117. Defendants registered, trafficked in, and used that domain name with a bad faith intent to profit from the Firm's mark. The indicia of bad faith set out in 15 U.S.C. § 1125(d)(1)(B)(i) are present:

A. Defendants have no trademark or other intellectual property rights in the domain name;

B. the domain name does not consist of the legal name of any Defendant or any name commonly used to identify any Defendant;

C. Defendants made no prior use of the domain name in connection with the bona fide offering of any goods or services, and no bona fide noncommercial or fair use of the mark — Defendants never operated a website at the domain at all;

D. Defendants registered the domain with the intent to divert the Firm's own client from the Firm, for commercial gain, by creating a likelihood of confusion as to the source and endorsement of Defendants' communications;

E. Defendants concealed their identity behind a privacy proxy and, on information and belief, provided material and misleading false contact information when applying for the registration, and intentionally failed to maintain accurate contact information; and

F. the KNEUPPER & COVEY mark is distinctive.

118. Defendants' conduct falls outside the safe harbor of 15 U.S.C. § 1125(d)(1)(B)(ii). No Defendant believed or had reasonable grounds to believe that the use of the domain name was fair or otherwise lawful.

119. The Firm is entitled to an order transferring or cancelling the domain name under 15 U.S.C. § 1125(d)(1)(C), to injunctive relief, to its actual damages and Defendants' profits, or in the alternative to statutory damages as the Court considers just, under 15 U.S.C. § 1117(d), together with costs and reasonable attorney's fees.

**COUNT VII**

**Violation of the Computer Fraud and Abuse Act**

**18 U.S.C. § 1030**

**(Both Plaintiffs Against All Defendants)**

120. Mr. Winston's e-mail account and the Firm's secure electronic form each reside on a protected computer within the meaning of 18 U.S.C. § 1030(e)(2)(B), as do the systems of the Firm, the mail providers, and the financial institutions involved.

121. Defendants knowingly and with intent to defraud accessed those protected computers without authorization and exceeded authorized access, and by means of that conduct furthered the intended fraud and obtained a thing of value, in violation of 18 U.S.C. § 1030(a)(4). Defendants accessed Mr. Winston's e-mail account without authorization and thereby obtained information, and accessed the Firm's secure electronic form without authorization and submitted false banking details through it, in violation of 18 U.S.C. § 1030(a)(2)(C).

122. Defendants' conduct caused loss to Plaintiffs during a one-year period aggregating at least $5,000 in value, within the meaning of 18 U.S.C. § 1030(c)(4)(A)(i)(I) and § 1030(e)(11), including the costs of responding to the offense, conducting a damage assessment, investigating the intrusion, remediating the Firm's secure form and e-mail systems, taking steps to prevent recurrence of the theft, and other consequential damages, and including the $23,726.63 obtained by means of the unauthorized access.

123. Plaintiffs are entitled to compensatory damages and injunctive and other equitable relief under 18 U.S.C. § 1030(g).

**COUNT VIII**

**Violation of the Stored Communications Act**

**18 U.S.C. §§ 2701, 2707**

**(Plaintiff Brandon Winston Against All Defendants)**

124. Mr. Winston's e-mail account is a facility through which an electronic communication service is provided, and the messages stored in it are in electronic storage within the meaning of 18 U.S.C. § 2510(17).

125. Defendants intentionally accessed that facility without authorization, and in excess of any authorization, and thereby obtained, altered, and prevented authorized access to Mr. Winston's electronic communications while those communications were in electronic storage, in

violation of 18 U.S.C. § 2701(a). Defendants read Mr. Winston's stored messages, sent messages from his account, and deleted messages from it.

126. Defendants' violations were intentional and willful.

127. Mr. Winston is entitled to the actual damages he suffered and any profits Defendants made, but in no case less than the statutory minimum of $1,000; to punitive damages; and to reasonable attorney's fees and other litigation costs reasonably incurred, under 18 U.S.C. § 2707(b) and (c).

**COUNT IX**

**Violation of the Georgia Computer Systems Protection Act**

**O.C.G.A. § 16-9-93**

**(Both Plaintiffs Against All Defendants)**

128. Defendants committed computer theft under O.C.G.A. § 16-9-93(a) by using a computer and computer network, including Mr. Winston's e-mail account and the Firm's secure electronic form, with knowledge that such use was without authority and with the intention of taking and appropriating Plaintiffs' property, of obtaining property by deceitful means and artful practice, and of converting Plaintiffs' property to Defendants' own use.

129. Defendants committed computer trespass under O.C.G.A. § 16-9-93(b) by using a computer and computer network with knowledge that such use was without authority and with the intention of deleting data from a

computer and obstructing and interfering with the use of a computer program and data.

130. Defendants committed computer invasion of privacy under O.C.G.A. § 16-9-93(c) by using a computer and computer network with the intention of examining Mr. Winston's personal and financial data without authority.

131. Defendants committed computer forgery under O.C.G.A. § 16-9-93(d) by creating, altering, and deleting data with knowledge that it would be represented as authentic when it was not, and which if written on a tangible document would have constituted forgery under Georgia law.

132. Plaintiffs' property and persons were injured by reason of those violations, and Plaintiffs are entitled to recover the damages they sustained, including lost profits and victim expenditure, and the costs of suit, under O.C.G.A. § 16-9-93(g)(1).

**COUNT X**

**Identity Fraud**

**O.C.G.A. §§ 16-9-121, 16-9-129, and 16-9-130**

**(Both Plaintiffs Against All Defendants)**

133. Defendants violated O.C.G.A. § 16-9-121 by willfully and fraudulently using identifying information of Brandon Winston without his authorization or consent, with the intent unlawfully to appropriate resources

of Mr. Winston and of the Firm to Defendants' own use and to the use of third persons.

134. Mr. Winston is a "consumer victim" within the meaning of O.C.G.A. § 16-9-120(3), because his personal identifying information was obtained, compromised, used, and recorded without his permission. He is entitled to equitable relief, general damages, punitive damages, three times his actual damages for Defendants' intentional violation, and his reasonable attorney's fees and expenses of litigation, under O.C.G.A. § 16-9-130.

135. The Firm is a "business victim" within the meaning of O.C.G.A. § 16-9-120(2), because it provided money to someone other than the intended recipient, without the intended recipient's permission, and suffered financial loss as a direct result of Defendants' violation of that article. The Firm is entitled to its actual damages, punitive damages, attorney's fees in the trial and appellate courts, and the costs of investigation and litigation reasonably incurred, under O.C.G.A. § 16-9-129.

136. Plaintiffs will serve a certified copy of this Complaint on the Attorney General of Georgia as required by O.C.G.A. § 16-9-130(e).

## COUNT XI

## Theft by Deception — Civil Action for Theft of Personal Property

## O.C.G.A. § 51-10-6

## (Both Plaintiffs Against All Defendants)

137. Plaintiffs owned the $23,726.63 held in the Firm's trust account: the Firm as fiduciary and Mr. Winston as beneficial owner.

138. Defendants committed a theft offense as defined in Article 1 of Chapter 8 of Title 16 of the Official Code of Georgia Annotated involving that property, including theft by deception under O.C.G.A. § 16-8-3 and theft by taking under O.C.G.A. § 16-8-2. Defendants obtained the property by deceitful means and artful practice, with the intention of depriving Plaintiffs of it, by creating and confirming a false impression that the Community Federal Savings Bank account was Mr. Winston's own and that he had directed his settlement funds to it.

139. Plaintiffs are entitled to compensatory damages, including the value of the property and every other loss sustained as a result of the theft offense, under O.C.G.A. § 51-10-6(b).

## COUNT XII

## Fraud

## (Both Plaintiffs Against All Defendants)

140. Defendants made false representations of material fact to Plaintiffs, including that Defendants' communications originated from the Firm, that Defendants' communications originated from Mr. Winston, that the banking details submitted through the Firm's secure form were Mr. Winston's own, and that the person who confirmed those details by telephone was Brandon Winston.

141. Defendants knew those representations were false when they made them, and made them with the intent that Plaintiffs rely on them.

142. Plaintiffs justifiably relied on those representations. The Firm released trust funds in reliance on them. Mr. Winston refrained from contacting the Firm through legitimate channels in reliance on the false representations made to him.

143. Plaintiffs were damaged as a proximate result, and are entitled to compensatory and punitive damages.

**COUNT XIII**

**Conversion**

**(Both Plaintiffs Against All Defendants)**

144. Plaintiffs had title to and the right of possession of a specific, identifiable fund of money: the $23,726.63 held in the Firm's Georgia IOLTA trust account for Mr. Winston's benefit, transferred on August 31, 2026 under Chase transaction no. 11234687280.

145. Defendants took and exercised dominion over that fund in defiance of Plaintiffs' rights, and appropriated it to their own use.

146. Demand for return would be futile, and Defendants' possession was wrongful from the outset, so no demand is required.

147. Plaintiffs are entitled to the value of the converted fund, together with interest, and to punitive damages.

**COUNT XIV**

**Money Had and Received and Unjust Enrichment**

**(Both Plaintiffs Against All Defendants)**

148. Defendants received $23,726.63 belonging to Plaintiffs, to which Defendants have no right and which in equity and good conscience they should not be permitted to keep.

149. Defendants have been unjustly enriched at Plaintiffs' expense, and Plaintiffs are entitled to restitution in that amount together with interest.

**COUNT XV**

**Constructive Trust, Equitable Accounting, and Injunctive Relief**

**(Both Plaintiffs Against All Defendants)**

150. The $23,726.63 that Defendants obtained, and all property traceable to it, belongs in equity to Plaintiffs. Defendants hold it as constructive trustees for Plaintiffs' benefit. O.C.G.A. § 53-12-132.

151. Plaintiffs are entitled to an accounting of every disposition of those funds and of all property traceable to them, and to imposition of a constructive trust and an equitable lien on that property.

152. Plaintiffs are also entitled to injunctive relief restraining Defendants from transferring, dissipating, or concealing the stolen funds and any property traceable to them; restraining Defendants from further use of the KNEUPPER & COVEY mark and of the domain name kneuppercovey.co; and requiring transfer of that domain name to the Firm. 18 U.S.C. § 1964(a); O.C.G.A. § 16-14-6(a) and (b); 15 U.S.C. §§ 1116, 1125(d)(1)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in Plaintiffs' favor and against Defendants, jointly and severally, on each Count of this Complaint;

B. Award Plaintiffs their actual and compensatory damages, including the $23,726.63 taken from the Firm's trust account, the costs of investigating and responding to Defendants' conduct, and all consequential damages, in an amount to be determined at trial;

C. Award Plaintiffs threefold their damages under 18 U.S.C. § 1964(c), O.C.G.A. § 16-14-6(c), O.C.G.A. § 16-9-130(b), and 15 U.S.C. § 1117(a);

D. Award the Firm statutory damages of not less than $1,000 and not more than $100,000 for the domain name kneuppercovey.co under 15 U.S.C. § 1117(d);

E. Award Mr. Winston statutory damages of not less than $1,000 under 18 U.S.C. § 2707(c);

F. Award punitive damages in an amount sufficient to punish Defendants and to deter similar conduct;

G. Impose a constructive trust and an equitable lien upon the $23,726.63 and all property traceable to it, and order an accounting of every disposition of those funds;

H. Enter a temporary restraining order, preliminary injunction, and permanent injunction restraining Defendants and all persons acting in concert with them from transferring, withdrawing, dissipating, encumbering, or concealing the stolen funds and any property traceable to them;

I. Enter a permanent injunction restraining Defendants and all persons acting in concert with them from using the KNEUPPER & COVEY mark, from registering or using any domain name confusingly similar to kneuppercovey.com, and from sending any communication purporting to originate from the Firm;

J. Order the registrar NameSilo, LLC and the registry operator for the .co top-level domain to transfer the domain name kneuppercovey.co to the Firm, or in the alternative to cancel it, under 15 U.S.C. § 1125(d)(1)(C);

K. Grant Plaintiffs leave to take limited expedited discovery under Federal Rule of Civil Procedure 26(d)(1) for the purpose of identifying Defendants, and extend the time for service under Federal Rule of Civil Procedure 4(m);

L. Grant Plaintiffs leave to amend this Complaint to name Defendants once their identities are ascertained;

M. Award Plaintiffs their reasonable attorney's fees, the costs of investigation and litigation, and their costs of suit under 18 U.S.C. § 1964(c), 15 U.S.C. § 1117, 18 U.S.C. § 1030(g), 18 U.S.C. § 2707(b)(3), O.C.G.A. § 16-14-6(c), O.C.G.A. § 16-9-93(g)(1), O.C.G.A. § 16-9-129, O.C.G.A. § 16-9-130(c), and O.C.G.A. § 13-6-11;

N. Award pre-judgment and post-judgment interest as allowed by law; and

O. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 16, 2026

KNEUPPER & COVEY PC

*/s/ A. Cyclone Covey*
A. Cyclone Covey
Georgia Bar No. 190747
11720 Amber Park Drive
Suite 160, PMB 1271
Alpharetta, Georgia 30009
(678) 928-6806 (direct)
(855) 596-3707 (fax)
cyclone@kneuppercovey.com

*Attorney for Plaintiffs*